IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ARTANYA D. H.,[1]              )
                                )
        Plaintiff,              )
                                )
vs.                             ) Civil No. 17-cv-1187-CJP[2]
                                )
COMMISSIONER OF SOCIAL          )
SECURITY,                       )
                                )
        Defendant.              )

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits in September 2013, alleging she became disabled as of January 13, 2013. After holding an evidentiary hearing, ALJ Mark Naggi denied the application on October 12, 2016. (Tr. 21-34). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 18.

1

## Issue Raised by Plaintiff

Plaintiff raises the following issues:

1. The ALJ erred in weighing the medical opinions.

2. The ALJ failed to properly consider the evidence at step two.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. The standard for disability under both sets of statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245

F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir.

2010), and cases cited therein.

## The Decision of the ALJ

ALJ Naggi followed the five-step analytical framework described above. He determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date and that she had severe impairments of depression, mood disorder, and carpal tunnel syndrome, which did not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform a limited range of light work. Her mental limitations were that she was restricted to simple, routine, repetitive tasks and simple work-related decisions; frequent interaction with supervisors and coworkers; and only occasional interaction with the public. She was expected to be off-task for 5% of the time, in addition to normal breaks.

The ALJ found that plaintiff could not do her past relevant work as a "final inspector." Based on the testimony of a vocational expert, the ALJ found that plaintiff was not disabled because she was able to do other jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. Plaintiff's arguments relate only to her mental limitations.

1. **Agency Forms**

Plaintiff was born in 1970 and was 42 years on the alleged date of disability.

(Tr. 207). She had completed 2 years of college and had worked as an inspector in a shoe factory and as a mail handler. (Tr. 212-214).

In a Function Report submitted in August 2014, plaintiff said she "had issues dealing with people in general." She had self-control issues and anxiety attacks, and was "very emotional." (Tr. 254). She alleged difficulty with memory, completing tasks, concentration, and getting along with others. (Tr. 259).

### 2. Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing in March 2016. (Tr. 43).

Plaintiff lived with her sons who were 29 and 17 years old. She babysat most days for her two-year-old grandson. (Tr. 47-50).

Plaintiff testified that she could not work because she doesn't do well dealing with people. She had mood swings and problems focusing. (Tr. 53). She also said that she did not "mistreat people" and she was "cordial" when she had to be. (Tr. 58).

A vocational expert (VE) also testified. The ALJ asked her a hypothetical question which corresponded to the RFC assessment. The VE testified that this person could not do plaintiff's past work, but she could do other jobs that exist in the national economy. (Tr. 61-63). She also testified that a person who was off-task for 20% of the time would be unemployable. (Tr. 65).

### 3. Relevant Medical Records

Plaintiff was diagnosed with depression and anxiety by a primary care provider in January 2013. The doctor felt this was likely related to her chronic

daily marihuana usage. The doctor recommended she stop smoking marihuana and prescribed Zoloft. (Tr. 305). In June 2013, the doctor recommended that plaintiff call Illinois Public Aid to find a psychiatrist covered by her insurance. She noted that plaintiff may have "underlying bipolar." (Tr. 309).

Plaintiff began receiving mental health treatment at Chestnut Health Systems in October 2013. She had a history of physical as well as mental abuse by her son's father. Her initial diagnoses were major depressive disorder, mood disorder, general anxiety disorder, and cannabis abuse, all uncontrolled. She was prescribed Lexapro. (Tr. 323-326). In December 2013, an Advanced Practice Nurse (APN) at Chestnut noted that plaintiff had not been taking her Lexapro. (Tr. 340).

In July 2014, plaintiff told an APN at Chestnut that she had stopped smoking marihuana for about a month. She was taking Geodon, which helped control her mood fluctuations, but Zoloft was not helping her depression. She was switched to Wellbutrin. On exam, she was oriented, calm, engaged and cooperative. No depressive symptoms were noted, and she did not appear anxious. In September 2014, Geodon was discontinued because it made her too sleepy and she was unable to function. Her mood was quite unstable. On exam, she was slightly hyper at times. She said she had issues trying to control her anger. She was started on Olanzapine. (Tr. 412-415).

Plaintiff began seeing APN JoEllen Juenger at Chestnut in October 2014. She saw APN Juenger a total of 10 times between October 2014 and November 2015. (Tr. 416-444-470). On the majority visits, APN Juenger noted on exam

that plaintiff had "no deficits" in maintaining attention and concentration, and she noted no memory deficits. In large part, her early notes reflect normal mental status exams in that plaintiff was neatly dressed and groomed, she was cooperative, her mood was euthymic, her thought process was coherent and goal-directed, and she had no suicidal thoughts or hallucinations. Plaintiff did complain of some "snapping." (Tr. 419, 422). However, in May, June, and July 2015, her affect was anxious, and her mood was dysphoric, and she reported financial and family stress. (Tr. 456, 460, 463). In September 2015, plaintiff reported that she was having flashbacks of childhood abuse, but she was also not taking her medications as prescribed. She "continues to deny the use of marijuana and alcohol." APN Juenger noted plaintiff was anxious and tearful and had impaired attention/concentration. (Tr. 465-466).

A different staff member at Chestnut evaluated plaintiff in September 2015. He noted that her depression symptoms had been "minimal since being on medication." He also noted that she used alcohol and cannabis on a consistent basis and that she met the criteria for cannabis dependence.

APN Juenger last saw plaintiff in November 2015. She also noted that plaintiff's depression symptoms had been "minimal" since being on medication. The notes for that date do not include any findings on exam. (Tr. 469-470).

4. **Medical Opinions**

On May 28, 2015, APN Juenger completed a form assessing plaintiff's mental RFC. (Tr. 406-409). This was the date of plaintiff's fifth visit with her. APN Juenger rated her ability to deal with the public, interact with supervisors, deal with

work stresses, maintain attention/concentration, carry out complex instructions, and demonstrate reliability as "poor or none." She said that plaintiff had "fair" ability to follow work rules, relate to co-workers, use judgment, function independently, carry out simple instructions, behave in an emotionally stable manner, and relate predictably in social situations. The form defined "fair" as "ability to function in this area is seriously limited, but not precluded." APN Juenger predicted that plaintiff would need at least 6 breaks in a workday and would be late or absent on 2 or more days a month. She also provided an undated narrative note stating that plaintiff had difficulty making decisions and difficulty with focusing and with her working memory. Her mood "can be unpredictable." (Tr. 410). In March 2016, APN Juenger affirmed her previous opinions, except that she now indicated that plaintiff's ability to relate to co-workers and relate predictably in social situations was poor, and her ability to behave in an emotionally stable manner was fair to poor. (Tr. 482).

In July 2016, Dr. Efobi, a board-certified psychiatrist, assessed plaintiff's mental RFC based on a review of the records. (Tr. 512-517). He indicated that she had only mild limitations in understanding and carrying out simple instructions, making simple work-related decisions, and responding appropriately to work situations and to changes in a routine work setting. She had no-to-mild limitations in dealing with the general public and moderate limitations in interacting with supervisors and co-workers. The form defined "moderate" as "more than a slight limitation in this area, but the individual is still able to function satisfactorily."

9

## Analysis

Plaintiff argues that the ALJ erred in assessing the weight he gave to the opinions of Nurse Juenger and Dr. Efobi.

The ALJ considered APN Juenger to be a treating source. Obviously, the ALJ was not required to credit her opinion because of her status; "while the treating physician's opinion is important, it is not the final word on a claimant's disability." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)(internal citation omitted). A treating source's medical opinion is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record. *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016), citing *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

Plaintiff's application was filed before March 27, 2017. The applicable regulation, 20 C.F.R. § 404.1527(c)(2), provides, in part:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.</u> [Emphasis added]

If the ALJ decides not to give the opinion controlling weight, he is to weigh it applying the factors set forth in § 404.1527(c)(1)-(6). Supportability and

consistency are two important factors to be considered in weighing medical opinions. In a nutshell, "[t]he regulations state that an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by 'medically acceptable clinical and laboratory diagnostic techniques[,]' and (2) it is 'not inconsistent' with substantial evidence in the record." *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010).

Here, the ALJ described APN Juenger's opinion in detail, noting that she said that plaintiff had poor ability to deal with the public, interact with supervisors, deal with work stresses, maintain attention/concentration, carry out complex instructions, and demonstrate reliability. He also noted the areas in which APN Juenger rated plaintiff as only fair. The ALJ then gave the following assessment of her opinion:

> While the undersigned finds that parts of Dr. Juenger's overall opinion are consistent with the record, her opinions that the claimant's ability to maintain attention/concentration is poor and she requires six or more breaks during a workday are not supported by her treatment records or any other evidence contained in the record and therefore warrant little weight.

(Tr. 32).

Plaintiff argues that § 404.1527(c)(2) provides that the ALJ "will always give good reasons in [the hearing decision] for the weight [given to the] treating source's opinion." She argues that the ALJ failed to do so here because he obviously rejected substantial parts of her opinion without explaining why.

APN Juenger rated plaintiff as only fair or poor in a number of areas of mental functioning. The ALJ took issue only with her opinion as to maintaining attention/concentration and requiring extra breaks. He observed that parts of her

11

opinion are consistent with the record, which would be, of course, a reason to accept those parts.

The Commissioner argues generally in her brief that the ALJ's RFC assessment was supported by the evidence, but she does not address plaintiff's specific argument regarding APN Juenger's opinion. The Court agrees that the ALJ did not give a sufficient explanation of how he weighed her opinion, and why he rejected parts of her opinion that were, according to him, consistent with the record.

The ALJ said that he gave "great weight" to Dr. Efobi because he is a specialist who is familiar with the agency's policy and regulations, he reviewed the complete record, and "he provided a detailed explanation with references to the evidence in the record to support his opinion." (Tr. 31). Plaintiff takes issue with the last point, arguing that Dr. Efobi cited to transcript pages that do not support his opinion.

Plaintiff is correct, as is demonstrated by a few examples. Dr. Efobi cited Ex. 9F, p. 2, to support his opinion that plaintiff had only mild-to-moderate limitations in maintaining social functioning. (Tr. 517). However, Ex. 9F, p. 2, is a narrative statement from APN Juenger stating that plaintiff's "ability to relate to co-workers is poor, her ability to behave in an emotionally stable [manner] is fair to poor, and her ability to relate predictably in social situations is fair to poor." (Tr. 482). Dr. Efobi cited Ex. 13F, pp. 2-4, to support his opinion that plaintiff had only mild limitations in activities of daily living. (Tr. 517). However, ex. 13F, pp. 2-4 is the mental RFC assessment form completed by APN Juenger; her opinions do

not support Dr. Efobi's opinion that plaintiff had only mild limitations in activities of daily living.

Again, the Commissioner's brief does not address plaintiff's specific argument. It is apparent that many of the pages cited by Dr. Efobi do not, in fact, support his opinion.

In view of the disposition of plaintiff's first point, it is not necessary to analyze her second argument. On remand, of course, the ALJ must consider all of plaintiff's impairments, severe and nonsevere, in combination. *Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014).

The ALJ's errors require remand. "If a decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review," a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir., 2012)(internal citation omitted).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period, or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:    December 5, 2018.**

                                    **s/ Clifford J. Proud**
                                    **CLIFFORD J. PROUD**
                                    **U.S. MAGISTRATE JUDGE**